## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CRYSTALL VANWYE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 2:22-cv-02255** |
| ) | |
| **vs.** ) | |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **ARROW CLEANERS & DRYERS, INC. d/b/a** ) | |
| **ARROW FIRE AND WATER** ) | |
| **RESTORATION,** ) | |
| **Serve Registered Agent:** ) | |
| **Fabian Benito** ) | |
| **1333 Washington Blvd.** ) | |
| **Kansas City, KS 66102** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Crystall VanWye, by and through the undersigned counsel, and for her Complaint against Defendant, states and alleges as follows:

## INTRODUCTION

1.     The claims in this Complaint, arise out of Plaintiff's employment relationship with Defendant.

2.     In violation of the Americans with Disabilities Act, 42 U.S.C.§ 12101 *et. seq.* Plaintiff was subjected to discrimination due to her disability status and/or request for reasonable accommodations.

3.     Plaintiff seeks all relief available under the ADA/ADAA, including but not limited to compensatory and punitive damages.

## PARTIES

4.      Plaintiff, Crystall VanWye, is and was at all times relevant to the allegations contained herein, a female resident of Kansas City, Missouri.

5.      Defendant, Arrow Cleaners & Dryers, Inc. d/b/a Arrow Fire and Water Restoration is a Kansas entity doing business in Kansas City, Kansas.

6.      Defendant was Plaintiff's employer at all times relevant to the allegations in this Complaint.

7.      At all times relevant to the facts alleged herein, Defendant employed more than 15 employees in the State of Kansas for each working day for twenty or more calendar weeks in the current or preceding year, and therefore qualifies as an "employer" for purposes of the ADA.

8.      Defendant is a Kansas limited liability company which acts through its agents. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which it knowingly ratifies, injuries incurred by agents' performance of its non-delegable duties, acts done by agents for which the agency relationship allows or assists the agent to perform, and acts its agents take by virtue of their position with Defendant.

## JURISDICTION AND VENUE

9.      Plaintiff was subjected to discriminatory and retaliatory acts as alleged herein in Kansas City, Wyandotte County, Kansas, making this Court the appropriate venue.

10.     Defendant is subject to personal jurisdiction in this Court because it does ongoing, continuous and substantial business Kansas, and is an entity organized under the laws of the State of Kansas.

## ADMINSITRATIVE PROCEDURES

11.     On or about May 5, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex/gender discrimination, disability discrimination and retaliation. The Charge was assigned the number 563-2021-01682. *A copy is attached hereto as Exhibit A and incorporated herein by reference.*

12.     On or about April 5, 2022, the EEOC issued Plaintiff a Notice of Right to Sue based on Charge 563-2021-01682. *A copy of the Notice is attached hereto as Exhibit B and incorporated by reference.*

13.     This action is timely filed with this Court and Plaintiff has met all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

14.     Plaintiff began her employment with Arrow Cleaners & Dryers, Inc. d/b/a Arrow Fire and Water Restoration on or about May 15, 2014.

15.     Plaintiff was hired on as a full-time warehouse supervisor at Defendant's location in Kansas City, Kansas.

16.     In December of 2020, Plaintiff contracted Covid-19 at work.

17.     Defendant failed to provide items like masks, hand sanitzer or Clorox wipes.

18.     Defendant did not have hot water in the bathroom to properly wash hands to stay safe.

19.     The week before Plaintiff contracted Covid-19, Defendant had a customer with a fire in their home.

20.     Two of Defendant's employees, Phil Gentry and Mike Ellis, went to the customer's home, packed it up and brought items back to Defendant's warehouse.

21.     As the warehouse supervisor, Plaintiff was to retrieve items that the customer requested and did so three different times.

22.     The next time Plaintiff came in contact with that particular order was when Plaintiff was tagging it for processing with Defendant's employees, Virginia Goodrich and Mike Ellis.

23.     While tagging the order, Mike Ellis informed Plaintiff that while doing a delivery to the customer, he was informed they had tested positive for Covid-19.

24.     Plaintiff then asked another of Defendant's employees, Mike Kenig, about the customer and family testing positive for Covid-19 and he confirmed that he knew about them testing positive but that Covid-19 could not live that long on items in the warehouse.

25.     On December 14, 2020, at approximately 12:07 P.M., Plaintiff texted Mike Kenig and asked to go home because she was not feeling well.

26.     Plaintiff later learned that Mike Kenig did not inform any of the employees that one of Plaintiff's co-worker's wives tested positive for Covid-19 on December 15, 2020.

27.     On December 15, 2020, Plaintiff went to the Emergency Room at Truman Medical Center – Lakewood and tested positive for Covid-19.

28.     Plaintiff texted Mike Kenig on December 15, 2020 that she would not be into work due to testing positive for Covid-19.

29.     Mike Kenig contacted Plaintiff and asked who she had told that she tested positive for Covid-19 and if she had told any of her co-workers.

30.     Upon information and belief, Mike Kenig spoke with the nurse that gave him his Covid-19 test about Plaintiff's Covid-19 test results and told Plaintiff that her results could have been inconclusive and that she needed to get tested again.

31.     Plaintiff tested 4 more times and each result was positive for Covid-19.

32.     Plaintiff was unable to return to work due to the positive Covid-19 test results until January 12, 2021.

33.     On or about January 12, 2021, Plaintiff returned to work but with restrictions including but not limited to taking 15-20 minute breaks, 4 to 5 times a day to rest.

34.     On Plaintiff's first day back, she was sent out on a full delivery to St. Louis.

35.     On the next day, Plaintiff asked to meet with Mike Kenig to discuss her position within the company.

36.     At approximately 3:00 P.M. on January, 13, 2021, Plaintiff met with Mike Kenig and was told that someone had to step up and her warehouse supervisor position had been given to another employee, Jennifer.

37.     Plaintiff inquired with Mike Kenig about her new position to which he replied he would have to speak to the owner, Fabian Benito, about what position she will have with the company.

38.     On January 15, 2021, Plaintiff woke up having a hard time breathing while getting ready for work.

39.     Plaintiff informed Mark Kenig that she was having a hard time breathing, but he continued to keep sending her out on deliveries ignoring her doctor's restrictions.

40.     Plaintiff believes that it was during this time she contracted Covid Pneumonia due to Defendant's failure to follow her work restrictions which exacerbated her condition.

41.     Plaintiff's last day working for Defendant was on January 18, 2021.

42.     On January 22, 202, Plaintiff texted Mike Kenig about receiving her paycheck.

43.     Mike Kenig informed Plaintiff that he had discussed her employment with Fabian Benito and Tatum Giarraputo and that Plaintiff would need to provide a doctor's note as to why she had missed work.

44.     Plaintiff never received an answer regarding her missed paycheck.

45.     On January 25, 2021, Plaintiff had a meeting with Fabian Benito and he informed Plaintiff that she may be laid off because he did not know when she would be able to come back to work.

46.     That same morning of the meeting, Plaintiff had a doctor's appointment and told Fabian Benito that she would call him right after, however Mr. Benito did not answer her call.

47.     On January 25, 2021, Plaintiff was sent to the Emergency Room, diagnosed with an enlarged heart and sent to a cardiologist.

48.     Plaintiff went to the Emergency Room three times in the week due to stress over her work demotion and not being paid.

49.     Plaintiff contacted Mike Kenig about her pay and was told she would have to use her P.T.O. (paid time off).

50.     Plaintiff was told she would have to get more tests because she had contracted Covid Pneumonia.

51.     Over the course of December 2020 through January 2021, Plaintiff was in and out of the hospital due to Covid-19 and related health issues.

52.     Plaintiff had doctor's visits due to Covid-19 and related health issues from January 2021 through March 2021.

53.     Plaintiff's doctors did not want her to perform extensive physical labor and provided work restrictions.

54.     Defendant failed to follow the doctor's work restrictions making her health condition worse.

55.     Plaintiff was demoted from her warehouse supervisor position and Defendant failed to provide any reasonable accommodation for her.

56.     During her employment with Defendant, Plaintiff had never been written up, warnings or any discipline actions against her.

57.     As a result of Defendant's conduct, Plaintiff has experienced lost wages and emotional distress.

58.     Defendant's unlawful conduct in the form of discrimination and retaliation has caused Plaintiff emotional distress, that has manifested itself in ways including but not limited to stress, anxiety, humiliation and embarrassment.

59.     At all times relevant to the allegations in this Complaint, the individuals alleged to have engaged in any wrongdoing or unlawful activity were agents, servants and/or employees of Defendant, and/or were acting within the course and scope of their employment and agency, making Defendant liable under the doctrine of *respondeat superior.*

60.     Alternatively, Defendant ratified the actions or misconduct alleged herein making it vicariously liable for such actions.

## COUNT I:

## ADA-Disability Discrimination

## 42 U.S.C. § 12101, *et seq.*

61.     Plaintiff reasserts the allegations set forth in the above paragraphs as if fully set forth herein.

62.     Defendant discriminated against Plaintiff in the terms and conditions of her employment.

63.     The ADA/ADAA prohibits discrimination against a person who has or is regarded as having a physical impairment that substantially limits one or more major life activities.

64.     The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability/perceived disability and constitute discrimination based on disability.

65.     By failing and refusing to engage in the interactive process and/or refusing to accommodate Plaintiff with respect to her disability, Defendant engaged in conduct that is prohibited by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

66.     Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein.

67.     Defendant's conduct caused Plaintiff degradation, humiliation, anxiety and emotional distress.

68.     The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

69.     Management level employees perpetuated the discrimination based on Plaintiff's status as a disabled individual, including terminating Plaintiff because of her disability.

70.     In addition, management level employees knew or should have known of the discrimination based on Plaintiff's disability but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

71.     The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore

Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff Crystal VanWye prays for judgment in her favor and against Defendant Arrow Cleaners & Dryers, Inc. d/b/a Arrow Fire and Water Restoration on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. § 12101, *et seq.*; for an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

### COUNT II:

### ADA – Retaliation

### 42 U.S.C. §§ 12101, *et seq.*

72.     Plaintiff reasserts the allegations set forth in the above paragraphs as if fully set forth herein.

73.     Plaintiff engaged in activity that is protected by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* as described above including but not limited to providing her doctor's work restrictions to Defendant and requesting a reasonable accommodation.

74.     Plaintiff suffered adverse employment action in that she was demoted and then terminated from employment after engaging in protected activity under the ADA.

75.     As a result of and in retaliation for engaging in the protected activities described above, Plaintiff was subjected to adverse employment actions.

76.     In retaliation for the exercise of Plaintiff's protected activities, Defendant demoted and then terminated Plaintiff.

77.     There is a causal connection between Plaintiff's exercise of protected activity and her demotion and ultimate termination.

78.     As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has incurred and will continue to incur damages which include medical bills, emotional distress, pain and suffering, past and future loss of wages and benefits, lost value of anticipated retirement benefits, detrimental job record, career damage, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses.

79.     The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated and reflected a conscious indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

80.     Plaintiff is entitled to recover all her costs, expenses, and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff Crystal VanWye prays for judgment in her favor and against Defendant Arrow Cleaners & Dryers, Inc. d/b/a Arrow Fire and Water Restoration on Count II of her Complaint, for an award of compensatory and punitive damages, for her costs expended, for her reasonable attorneys' fees and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

Respectfully submitted,

**LAUREN ALLEN, LLC**

By: _/s/ Lauren Perkins Allen_
    Lauren Perkins Allen, #20116
    4717 Grand Avenue, Suite 130
    Kansas City, Missouri 64112
    Telephone: 816.877.8120
    Facsimile: 816.817.1120
    Email: lpa@laurenallenllc.com
    **ATTORNEY FOR PLAINTIFF**